OPINION OF THE COURT
Richard Lee Price, J.
I. Background and Procedural History
Defendant was arrested on December 29, 2012 for operating a motor vehicle while under the influence of alcohol. By indictment filed October 11, 2013, the defendant was charged with four counts of operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2], [3], as both E felonies and misdemeanors).
By motion submitted March 14, 2014, defendant moved for omnibus relief seeking, among other things, an order compelling discovery pursuant to Criminal Procedure Law § 240.20 for material that the People failed to disclose. By decision and order dated March 27, 2014 (Boyle, J.), defendant’s motion was denied with leave to renew any discovery demand he contended the People improperly refused.
By letter dated April 16, 2014, defendant renewed his demand that, pursuant to CPL 240.20, the People disclose and produce, among other things, (1) all records from December 29, 2011 through June 29, 2013 relating to the maintenance, calibration, inspection, check and/or other tests performed on the Intoxilyzer 5000EN that was utilized (one year prior to and six months following defendant’s arrest); (2) certification certificate of the Intoxilyzer 5000EN operator; and (3) any and all documents relating to the preparation and testing of the simulator solution, the forensic method utilized in the production of the simulator solution, the standard operating procedures for the production of all simulator solutions utilized in *395 defendant’s testing, and the actual chromatograms of the head-space gas chromatography. In that demand, the defendant also moved to preclude the use of such evidence based upon the People’s willful failure and refusal to comply.
On April 17, 2014, the People disclosed an initial discovery package including but not limited to the Intoxilyzer 5000EN driver examination report, technician test report, Intoxilyzeralcohol analyzer, certificate of calibration (dated Sept. 14, 2012), field unit inspection report (dated Jan. 2, 2013 and Dec. 20, 2012), 0.10% simulator solution record (lot No. 12110, dated Aug. 20, 2012), and 0.10% simulator solution record (lot No. 12080, dated June 13, 2012). Given such disclosure, the People opposed defendant’s demand for the specified material arguing that they fully complied with the mandates of CPL 240.20 (1) (k), and that defendant’s demand fell outside its parameters.
By decision and order dated December 15, 2014, this court granted defendant’s motion to compel the People to produce additional hard copy reports and corresponding documentation for: all records from December 29, 2011 through June 29, 2013 relating to the maintenance, calibration, inspection, check and/or other tests performed on the Intoxilyzer 5000EN that was utilized (one year prior to and six months following defendant’s arrest); certification certificate of the Intoxilyzer 5000EN operator; and any and all documents relating to the preparation and testing of the simulator solution, the forensic method utilized in the production of the simulator solution, the standard operating procedures for the production of all simulator solutions utilized in defendant’s testing, and the actual chromatograms of the headspace gas chromatography (45 Misc 3d 1227[A], 2014 NY Slip Op 51740[U] [2014]). This court denied the People’s motion seeking leave to reargue on May 22, 2015.
Now, by motion submitted October 30, 2015, defendant moves this court to sanction the People for failing to comply with this court’s December 15, 2014 order. Specifically, defendant seeks dismissal of the indictment or, in the alternative, preclusion of the Intoxilyzer 5000EN test results. After review of the motion papers, papers on file with the court, and prior court proceedings, defendant’s motion is denied.
II. Discussion
It has long been recognized that a party’s failure to comply, in a timely fashion, with a demand to produce is sanctionable *396 (People v Jenkins, 98 NY2d 280, 284 [2002]; People v James, 93 NY2d 620, 644 [1999]; People v Anderson, 66 NY2d 529, 543 [1985]; People v Kelly, 62 NY2d 516, 521 [1984]). While there are several exceptions, as both the People and defendant note, none directly or adequately address the circumstance presented here.
Ultimately, the decision of whether to sanction a party for failing to produce and disclose discoverable material, and if so which one, rests within the sound discretion of the trial court (Kelly, 62 NY2d at 521). When making such a determination, the court must first assess the potential prejudice caused by such failure, and whether or not a sanction will cure it (Kelly at 521). Given this court’s previous determination that what the defendant seeks is discoverable, which was based upon the specific and limited nature of his application in conjunction with the People’s paltry response, defendant now petitions this court to sanction the People for their failure to produce such material.
The problem, as the People aptly articulate, is that such failure was precipitated by their inability to procure it, not their willful refusal to obtain it. Notwithstanding this court’s opinion that such material is reasonably contemplated within the meaning of CPL 240.20 (1) (k), the reality is that the reports and documentation that were ordered to be produced are within the exclusive custody of the New York State Police (NYSP), not the New York City Police Department or any other law enforcement agency over which the People maintain control (People v Santorelli, 95 NY2d 412 [2000]). And, the NYSP refused to release it.
Indeed, the NYSP’s refusal presents a legitimate impediment to the People’s compliance, thus making a contempt finding against them implausible if not entirely inapplicable. Assuming this court were to make such a finding, which it is not, the question remains whether the imposition of any sanction would cure the People’s failure. As discussed below, this court concludes it would not.
A. Dismissal
CPL 240.70 (1) provides, as a general matter, that dismissal is a “drastic remedy . . . [that] should not be invoked where less severe measures can rectify the harm done” (Kelly, 62 NY2d at 521). As such, dismissal may be appropriate where “the movant conclusively establishes that the frustration of discovery was willful, contumacious, or due to bad faith” *397 (1 New York Examination Before Trial and Other Disclosure Devices § 10:17 [Sept. 2015]). Furthermore, CPLR 3126 stresses that, in the absence of an excuse for delay in responding to discovery demands and a party’s failure to object to the demands, an inference is drawn that the failure to comply was willful, and would necessitate an order to dismiss as a sanction. It would be an abuse of discretion, however, to dismiss for failure to comply with discovery time limits where the prosecutor has made diligent efforts to locate required documents, has delivered all documents which it was able to find, and has been able to obtain some documents because they have been turned over (Harris Corp. v Federal Ins. Co., 156 AD2d 245 [1989]).
Here, there is no claim that the District Attorney failed to act in good faith. To the contrary, the People made a diligent effort to locate all records from December 29, 2011 through June 29, 2013 relating to the maintenance, calibration, inspection, check and/or other tests performed on the Intoxilyzer 5000EN utilized prior to, during and after the defendant’s arrest and the certification certificate of the Intoxilyzer 5000EN operator; and any and all documents relating to the preparation and testing of the simulator solution, the forensic method utilized in the production of the simulator solution, the standard operating procedures for the production of all simulator solutions utilized in defendant’s testing, along with the actual chromatograms of the headspace gas chromatography. These documents were generated by, and are located at, the NYSP laboratory. As such, they are within the exclusive control of the NYSP. The sole basis for the District Attorney’s inability to procure and produce them, then, is the outright refusal of the NYSP to provide them, not the District Attorney’s willful noncompliance. And, as this court stated in its May 22, 2015 decision and order denying reargument, the NYSP’s self-serving and defiant refusal to comply with such production clearly establishes that.
In light of this, defendant’s reliance on People v Garrett (23 NY3d 878 [2014]) to illustrate the People’s lack of good faith effort to obtain the discoverable materials is misplaced. Under Garrett, defendant argues that the District Attorney is essentially charged with being in constructive possession of such materials. According to the defendant, the People are therefore responsible for producing them as a matter of law regardless of whether they are actually able to do so. The problem with defendant’s analysis, however, is that Garrett addressed Brady *398 material, a notably significant distinction (Garrett, 23 NY3d at 886-887). Defendant makes no claim that the material he seeks constitutes Brady material. The People cannot, therefore, be deemed to be in constructive possession of the Intoxilyzer 5000EN reports and documentation.
The District Attorney diligently located, obtained, and produced all documents that were within her control, meaning anything that the NYSP deemed appropriate. This, too, undermines defendant’s constructive possession argument. It also belies any claim that the People acted in bad faith. Accordingly, the extreme measure of dismissal of the indictment is inappropriate.
B. Preclusion
Under a similar analysis, preclusion is also inappropriate. Preclusion is “a severe sanction, not to be employed unless any potential prejudice arising from the failure to disclose cannot be cured by a lesser sanction” (People v Jenkins, 98 NY2d 280, 284 [2002]). Indeed, a lesser sanction should be considered before resorting to preclusion, or dismissal for that matter; to do otherwise would severely compromise the truth-seeking function of the trial by precluding evidence critical to the case (Jenkins, 98 NY2d at 284). To this end, the discovery at issue must be analyzed as to its materiality, and whether or not it is critical in the case. Ultimately, though, “[t]he overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society” (Jenkins at 284, citing Kelly, 62 NY2d at 520). Where a defendant establishes that he has been unduly prejudiced by its non-production, preclusion may be an appropriate sanction, but only when a lesser fails to cure such prejudice (Jenkins at 284).
Here, it is axiomatic that the defendant’s Intoxilyzer 5000EN test result is material and fundamental to the People’s Vehicle and Traffic Law § 1192 prosecution. And, as noted, in conjunction with it, the People disclosed the Intoxilyzer 5000EN driver examination report, technician test report, Intoxilyzer-alcohol analyzer, certificate of calibration (dated Sept. 14, 2012), field unit inspection report (dated Jan. 2, 2013 and Dec. 20, 2012), 0.10% simulator solution record (lot No. 12110, dated Aug. 20, 2012), and 0.10% simulator solution record (lot No. 12080, dated June 13, 2012).
The question, then, is whether this court should preclude the People from introducing the defendant’s Intoxilyzer 5000EN test result along with any testimony relating to it because of *399 their noncompliance with this court’s order to produce additional hard copy reports and corresponding documentation, specifically: all records from December 29, 2011 through June 29, 2013 relating to the maintenance, calibration, inspection, check and/or other tests performed on the Intoxilyzer 5000EN that was utilized (one year prior to and six months following defendant’s arrest); certification certificate of the Intoxilyzer 5000EN operator; and any and all documents relating to the preparation and testing of the simulator solution, the forensic method utilized in the production of the simulator solution, the standard operating procedures for the production of all simulator solutions utilized in defendant’s testing, and the actual chromatograms of the headspace gas chromatography.
Before entertaining preclusion, however, the defendant must first demonstrate that he has been prejudiced by the People’s nondisclosure. He cannot. Merely because this court concluded that the reports and documentation he sought were a fair and reasonable interpretation of that which is discoverable under CPL 240.20 (1) (k) does not necessarily mean such nondisclosure prejudices him. In fact, defendant articulates no particularized factual basis to believe that the material he seeks contains anything of such a nature that will prejudice him. Thus, to contemplate preclusion under these circumstances would severely compromise the truth-seeking function of a trial. It is, therefore, entirely unwarranted.
C. Adverse Inference Charge
To the extent the People’s noncompliance requires a cure, if indeed it does, the only available option is an adverse inference instruction. But, imposing it here is inappropriate as well. While an adverse inference charge is a less severe measure that the jury could take against the prosecution for the absence of such reports and documentation, it too must be contemplated in conjunction with the circumstances under which they are missing. Imposing an adverse inference charge in the context of this case would engender the implication that the People’s noncompliance was of their own doing; it was not. Rather, the responsibility for the People’s inability to procure the reports and documentation ordered falls squarely on the shoulders of the NYSP.
If there was one avenue available to the People, it would have been to petition this court pursuant to CPL 610.20 (2) to issue a subpoena, which this court would certainly have done. Given the NYSP’s outright and defiant refusal, however, it *400 would have been pointless. True, it may have provoked a motion to quash by the NYSP, but that would have resulted in a separate proceeding involving the NYSP, not the District Attorney. And, more importantly, it would have no bearing on the People’s good faith efforts. To be sure, CPL 610.20 (3) also permits a defendant to obtain a subpoena. But that would have been equally pointless (People v Colavito, 87 NY2d 423, 428 [1996]).
In short, punishing the People, or holding them in any way responsible, for the NYSP’s steadfast refusal to provide that which this court ordered be produced is both ineffective and inappropriate. Unfortunately, then, this court is then left with only one responsible alternative: inaction.
III. Conclusion
Given that the reports and documentation ordered by this court to be produced are within the exclusive control of the NYSP, and their adamant refusal to release them, the District Attorney’s inability to produce them is simply not sanctionable. This court finds it unconscionable that the NYSP disseminates their Intoxilyzer 5000EN machine throughout the state, in part for the benefit of local prosecutors, only to place those prosecutors in the untenable and unenviable position of bearing the consequences for NYSP’s capricious refusal to comply with judicial orders. That said, it is patently absurd to sanction the District Attorney for it.
Defendant’s motion is therefore denied in its entirety.